IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Terrance Edwards, ) | |
| Petitioner, ) | Civil Action No. 6:11-2409-MGL-KFM |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Leroy Cartledge, Warden, ) | |
| Respondent. ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently confined at McCormick Correctional Institution in the South Carolina Department of Corrections ("SCDC") pursuant to orders of commitment from the Clerk of Court of Abbeville County. The petitioner and his co-defendant, Sergio Marshall, were indicted in October 2001 for murder, armed robbery, grand larceny of a motor vehicle, possession of a pistol by a person under 21 years of age, and possession of a firearm or knife during the commission of a violent crime (App. 503-505).[1] On July 15, 2002, Marshall pled guilty as charged (App. 443-93). The petitioner elected a jury trial. A jury trial was held September 16-18, 2002. The Honorable Wyatt T. Saunders presided.

---

[1] "App." refers to the Appendix filed in the PCR appeal. "Supp. App." refers to the supplemental Appendix filed in the PCR appeal.

The petitioner was convicted as charged (App. 383). Thereafter, he was sentenced to 30 years imprisonment for murder; 25 years, consecutive, for armed robbery; five years, concurrent, for grand larceny of a motor vehicle; and five years, concurrent, for each of the weapon charges (App. 397-98).

## UNDERLYING CASE FACTS

The evidence introduced at the petitioner's murder trial showed that his co-defendant, Marshall, shot the victim twice, once in the head and once in the arm. At some point during the altercation, but before he died, the victim also received strong blows to his face. The petitioner admitted to law enforcement that he helped Marshall hide the victim's body under a nearby pile of logs in the field where he was shot. Afterwards, the petitioner was found with cash from the victim's wallet on his person; the victim's wallet was found in the trunk of petitioner's car; and, the victim's breath spray was found hidden under his mattress. The Solicitor presented the case on the theory of accomplice liability based on the undisputed evidence of the petitioner's involvement in at least some aspect of the crimes. The jury found the petitioner guilty of all five charges. Subsequently, he was sentenced to 55 years in prison. *Edwards v. State of South Carolina*, Op. No. 26977 (S.C. May 23, 2011).

## PROCEDURAL HISTORY

The petitioner filed a direct appeal and was represented by his trial counsel, Charles Grose, on appeal along with Assistant Appellate Defender Robert M. Dudek, of the South Carolina Office of Appellate Defense. The petitioner filed a Final Brief of Appellant and a Final Reply Brief in the South Carolina Court of Appeals on October 21, 2004 (Supp. App. 53-79; 110-23). The petitioner raised the following issues:

> Whether the court erred by refusing to grant a new trial after it was apparent the solicitor pursued fundamentally inconsistent prosecutions where the solicitor asserted at co-defendant Marshall's guilty plea that Marshall unexpectedly shot the decedent during a dispute between the two, and that appellant

was essentially an accessory after the fact for Marshall, and the solicitor then strongly suggested during appellant's subsequent trial that appellant may have shot the decedent and that appellant was covering up for himself after the crime, since the solicitor was collaterally and judicially estopped from pursuing such fundamentally inconsistent prosecutions, and the solicitor's actions were fundamentally unfair?

Whether the court erred by denying appellant's motion to exclude evidence appellant had "joked" with Marshall about robbing someone in the past since the state was collaterally and judicially estopped from trying to make appellant's involvement in a planned robbery an issue based on its assertions at Marshall's guilty plea, and the probative value of this evidence was substantially outweighed by its prejudicial effect, and its tendency to mislead and confuse the jury under Rule 403, SCRE?

(Supp. App. 56).

The Court of Appeals heard oral argument on March 9, 2005, and on April 7, 2005, issued an opinion affirming the convictions. *State v. Edwards*, Unpublished Op. No. 2005-UP-256 (S.C. Ct. App. April 7, 2005). The petitioner filed a petition for rehearing on June 22, 2005, which the state court of appeals denied on August 26, 2005 (Supp. App. 130-39, 141).

On November 28, 2005, the petitioner filed a Petition for Writ of Certiorari in the Supreme Court of South Carolina and presented the following questions for consideration:

Whether the Court of Appeals erred by ruling the trial judge correctly refused to grant a new trial after it was apparent the solicitor pursued fundamentally inconsistent prosecutions where the solicitor asserted at co-defendant Marshall's guilty plea that Marshall unexpectedly shot the decedent during a dispute between the two, and that the petitioner was essentially

an accessory after the fact for Marshall, and the solicitor then strongly suggested during the petitioner's subsequent trial that the petitioner may have shot the decedent and that the petitioner was covering up for himself after the crime, since the solicitor was collaterally and judicially estopped from pursuing such fundamentally inconsistent prosecutions, and the solicitor's actions were fundamentally unfair?

Whether the Court of Appeals erred by ruling the trial judge properly denied the petitioner's motion to exclude evidence the petitioner had "joked" with Marshall about robbing someone in the past since the state was collaterally and judicially estopped from trying to make the petitioner's involvement in a planned robbery an issue based on its assertions at Marshall's guilty plea, and the probative value of this evidence was substantially outweighed by its prejudicial effect, and its tendency to mislead and confuse the jury under rule 403, SCRE?

(Supp. App. 145).

The State made its return on January 26, 2006 (Supp. App. 169-94). The Supreme Court of South Carolina denied the petition on January 18, 2007 (Supp. App. 196-97), and the South Carolina Court of Appeals issued the remittitur on January 24, 2007 (Supp. App. 198).

On April 17, 2007, the petitioner filed a Petition for Writ of Certiorari in the Supreme Court of the United States in which he presented the following question for consideration:

Was Petitioner denied due process because South Carolina pursued fundamentally inconsistent prosecutions when the State acknowledged at codefendant Marshall's guilty plea that there was no evidence of a plan or conspiracy, that Marshall acted alone, that Marshall got into a dispute with the decedent, and that Marshall unexpectedly shot the victim while Petitioner was merely present and then asserted during Petitioner's subsequent jury trial that Petitioner had planned and conspired

4

> with Marshall to commit crimes which led to shooting the
> decedent, that Petitioner knew there would be a shooting, that
> Petitioner participated in the shooting, and that the petitioner
> might have been the shooter?

(Supp. App. 200). The State filed a Brief in Opposition on May 24, 2007 (Supp. App. 225-51). The court denied the petition on June 25, 2007.

On February 21, 2008, the petitioner filed an application for post-conviction relief ("PCR"), in which he claimed ineffective assistance of counsel, alleging "Trial counsel failed to know the facts in relation to the law and make proper objection to the solicitor's misconduct" (App. 403).

The State made a return to the application on May 16, 2008 (App. 409-12). Thomas E. Hite, Jr., represented the petitioner in the action. An evidentiary hearing was held July 14, 2008, before the Honorable J. Mark Hayes. Judge Hayes issued a written order of dismissal on September 5, 2008 (App. 495-502). The petitioner appealed the denial of relief.

Appellate Defender LaNelle C. DuRant of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal. Counsel filed a Petition for Writ of Certiorari in the Supreme Court of South Carolina on April 29, 2009, and raised the following issue:

> Did the PCR court err in failing to find trial counsel ineffective
> for not calling the co-defendant, Sergio Marshall, to testify at
> the petitioner's trial when the codefendant stated at the PCR
> hearing that he would have told the jury that he was the
> gunman and that the petitioner had nothing to do with the
> shooting of the victim as he never implicated the petitioner at
> this guilty plea or in his statements to police?

(PCR Appeal Cert. Pet. 2).

The State made its return to the petition on September 21, 2009. By Order dated May 14, 2010, the Supreme Court of South Carolina granted the petition and ordered briefing. On May 23, 2011, the Supreme Court of South Carolina issued an opinion affirming the PCR judge's ruling. *Edwards v. State*, 710 S.E.2d 60 (S.C. 2011). The state court issued the remittitur on June 9, 2011.

## FEDERAL HABEAS ACTION

On September 9, 2011, the petitioner filed his *pro se* Petition for Writ of Habeas Corpus now before this court, in which he makes the following claims of error (verbatim):

> **Ground One**: Due process violation occurred where State Solicitor advanced inconsistent theories during the petitioner and Co-Defendant's criminal adversarial process.
>
> Supporting facts: [W]hen the co-defendant Sergio Marshall pled guilty to Murder ... the State acknowledged that there was no evidence of a plan or a conspiracy concerning Petitioner and, in fact, co-defendant Marshall acted alone in his unexpected shooting of the victim. As Petitioner proceeded to trial thereafter, the State's Solicitor advanced an inconsistent theory of accomplice liability based on allegations which merely suggest Petitioner's involvement simply because of presence; in fact, the Solicitor averred before the jury trial court that not only did Petitioner knew there would be a shooting, but that he participated in the shooting and might have been the shooter. ...
>
> **Ground Two**: Petitioner maintains being deprived of Effective Assistance of Trial Counsel, despite ruling of State's Highest Court.
>
> Supporting facts: Petitioner originally brought this claim of Ineffective Assistance of Trial Counsel in his 'PCR' State-court

6

Action, and elicited in-court testimony from Co-Defendant Marshall (who clearly stated in the Evidentiary Hearing, "... I would have told the jury ... (Petitioner's) involvement was none. He was not even involved in the crime") to provide an evidently basis for Petitioner's claim of Counsel being ineffective for failing to call Co-Defendant Marshall as a defense witness, it follows that the S.C. Supreme court's Order AFFIRMING the State PCR Judge's Denial and Prejudicial Dismissal of PCR action is an Order which stand upon the S.C. Supreme Court's interpretation of *Strickland v. Washington*, 466 U.S. 668 (1984), as rendered in *Jackson v. State*, 329 S.C. 345, 495 S.E.2d 768 (1998). Petitioner's claim before this Court is that the S.C. Supreme Court 'unreasonably applied' *Strickland* to the above noted facts through its *Jackson* Opinion.

(Pet. 6-9; Memo in Support 2-5).

On November 14, 2011, the respondent filed a motion for summary judgment. By order filed on November 15, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  The petitioner filed his response in opposition on  December 19, 2011.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining

whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

### *Ground One*

In Ground One, the petitioner complains that he has suffered a violation of due process by the State being allowed to present inconsistent theories in his co-

defendant's (Marshall's) plea hearing and at his trial. The respondent argues that this ground is procedurally barred because, while the petitioner raised on direct appeal the issue of whether the trial court erred in refusing to grant a new trial when the Solicitor pursued inconsistent prosecutions of the petitioner and his co-defendant, the petitioner did not specifically assert a due process issue until he filed the Petition for Writ of Certiorari in the Supreme Court of the United States in his direct appeal (Supp. App. 200). The Supreme Court has noted that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). Here, in the interest of judicial economy, it is more efficient to proceed directly to the merits of this claim.

As argued by the respondent, there is no clearly recognized basis in federal law as defined by the Supreme Court to find a due process violation in the State presenting varying theories in separate prosecutions. *See Bradshaw v. Stumpf*, 545 U.S. 175, 190 (2005) (Thomas, J., concurring) ("This Court has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories.").[2] Further, in the cases where there is a suggestion that a due process violation

---

[2] In *Bradshaw*, 545 U.S. at 184-87, the Supreme Court considered a petitioner's challenge to his guilty plea of aggravated murder and attempted aggravated murder. The Court rejected Stumpf's argument that inconsistent arguments about the identity of the triggerman at his trial and the trial of his co-perpetrator required reversal of the convictions. The Court reasoned that the identity of the triggerman was immaterial because the intent element of the offense did not require the defendant to pull the trigger. The Court did note that the use of the allegedly inconsistent theories may have had an effect on sentencing, but declined to express an "opinion on whether the prosecutor's actions amounted to a due process violation, or whether any such violation would have been prejudicial." *Id.* at 187.

may arise, the issue is based on more than mere inconsistency; rather, the inconsistency must exist at the core of the State's case. *See, e.g., United States v. Higgs*, 353 F.3d 281, 326 (4th Cir. 2003) ("In some situations, the Due Process Clause prohibits the government from presenting mutually inconsistent theories of the same case against different defendants. For example, due process may be violated if 'an inconsistency ... exist[s] at the core of the prosecutor's cases against the defendants for the same crime,'... or where the evidence used at the two trials is 'factually inconsistent and irreconcilable,'") (internal citations omitted). *See also* 16C C.J.S. Constitutional Law § 1644 ("due process violation resulting from inconsistent theories presented in the prosecution's case will only be found when the demonstrated inconsistency exists at the core of the state's case. Discrepancies based on rational inferences from ambiguous evidence will not support a due process violation provided the two theories are supported by consistent underlying facts.").

Even assuming, *arguendo*, that the applicable law is clearly established by the Supreme Court of the United States[3], the petitioner has not shown an inconsistency at the core of the State's case. The South Carolina Court of Appeals, in deciding the petitioner's issue of collateral and judicial estoppel on his direct appeal, found that the record does not show patent inconsistency:

> Importantly, a threshold determination in any discussion of the applicability of either collateral or judicial estoppel is that two inconsistent statements were made. To determine this, the court must examine the exact language used at Marshall's plea hearing and Edwards' trial.

---

[3]In finding that the Supreme Court's decision in *Bradshaw v. Stumpf*, 545 U.S. 175 (2005) was not "clearly established" federal law on this issue, the Eleventh Circuit Court of Appeals has stated, "[T]he *Bradshaw* Court did not hold that the use of inconsistent theories in the prosecution of two defendants violates the right to due process." *Fotopoulos v. Secretary, Dept. of Corrections*, 516 F.3d 1229, 1235 (11th Cir. 2008).

Chief Sheriff's Deputy Marion Johnson and Solicitor Townes Jones provided the factual predicate for the crime against Marshall. Johnson began by explaining:

> Marshall . . . kind of held back on us, wouldn't tell us anything . . . . He did come forward and admitted to shooting - the defendant admitted to shooting ... the victim . . . . There were two gunshot wounds to the body, one to the arm and the other to the back of the head. There was also blunt trauma around the chest and arms and the rest of the body. . .. They also did take a wallet from the pocket of Mr. Blackston which contained about one hundred and fifteen dollars, and they split the money up and went to the Anderson County Fair ....

Next, the court asked about Marshall's motive. Johnson replied, "From what Mr. Edwards states and the best we can determine they were out there, and they were rolling up a joint ... and for some reason Mr. Marshall was the one that actually shot Mr. Blackston."

Solicitor Jones then interrupted and stated:

> [R]elying solely on the evidence that we would be prepared to present at trial in this case, you know, we would have presented to the jury that this defendant and the victim were together alone, they were acquaintances, and they had no prior evidence of a significant problem or threat to do bodily harm to either prior (sic) to this occasion. But ... there were verbal disagreements or verbal remarks between the two that one could surmise and conclude amounted to a kind of machismo standoff . . .. [A]nd unfortunately a relationship that on the surface appeared to be one that involved friendship turned quickly, abruptly deadly. That would be our argument.

The solicitor continued regarding motive:

> We would not be able to argue that we had evidence to show that there was a conspiracy or that there was any plan and intent to commit this robbery, but nevertheless, the fact that it was conducted in conjunction with the murder in our

opinion would give rise to argue at least that it was in the mind of the murderer.

And concluded, "[W]hat I have presented to you would have been the argument that we would have made from the facts that we felt we would have had at trial."

Later, at Edwards' trial, the solicitor in his closing statement explained the shooting might have begun as a robbery, but if Blackston refused, "Mr. Gunman says enough of that, pop." The solicitor continued by saying, "Assuming that Sergio was the shooter," Edwards "helped him move the body," "get away from the scene," they gave each other an alibi, and "aid[ed] and abet[ted] each other."

Edwards argues the State suggested he was the gunman in the closing statement whereas the factual predicate in the Marshall plea shows the State's understanding and theory was that Marshall was the gunman.

After a careful review of the record, we cannot determine the solicitor's comment that "Mr. Gunman says enough to that, pop," constitutes a suggestion Edwards was the gunman. Edwards seeks to pair this language with the solicitor's comments on Edwards' claim he was just an accessory after the fact with regard to the robbery charge. The solicitor did ridicule such a claim, characterizing Edwards' counsel's argument as, "He's going to try to tell you what I did for [Marshall] was dumb. It was dumb and it was, uh, let's see, accessory after the fact. He was already shot and dead, and Terrence came along and helped him afterwards, or he was already robbing him and Terrence just kind of helped him afterwards, kind of." The solicitor did anticipate and attack the arguments likely to be advanced on behalf of Edwards, but we do not see how that attack contradicts the State's comments at Marshall's plea hearing.

In examining the transcript from the plea hearing, the only comment that gives the court pause is the solicitor's statement that "relying solely on the evidence that we would be prepared to present at trial in this case ... we would have presented to the jury that this defendant and the victim were together alone, ... [and the] friendship turned quickly, abruptly deadly." (emphasis added). The solicitor's use of the word "alone" is the linchpin of Edwards case. However, when read against the full explanation that had just been provided to the court by Johnson, it is not enough. Johnson's explanation clearly showed that another person, Edwards, was present and a co-defendant in this case.

13

> As such, any reliance on the term "alone" is mitigated by the fuller explanation provided to the court by the State. Just as a court cannot view a term in isolation when interpreting a statute or contract, or determining whether a jury charge is in error, we will not wrench for context a comment made by the solicitor in this case. ...
>
> After a careful reading of the State's explanation of the case in the Marshall plea hearing and the State's arguments at trial, we find no inconsistent position. We specifically decline to address South Carolina's adoption of either collateral estoppel or judicial estoppel in the criminal context, and instead hold that neither would apply because there was no inconsistency between the solicitor's positions.

*State v. Edwards*, Opinion No. 2005-UP-256, at 4-7 (S.C. Ct. App. April 7, 2005),

Moreover, in the PCR appeal, the petitioner again asserted the Solicitor argued inconsistent facts. The Supreme Court of South Carolina reviewed the facts of record and rejected the petitioner's premise:

> Petitioner also alleges that had [Marshall's testimony] been presented, the Solicitor would not have had the opportunity to argue to the jury that Petitioner was the shooter as opposed to Marshall. After a thorough review of the record, we find no evidence to support Petitioner's contention that the Solicitor argued Petitioner shot Blackston. Rather, the record clearly shows the Solicitor argued the case on a theory of accomplice liability, not principal liability.

*Edwards v. State*, Opinion No. 26977, at 8 n. 2.

As argued by the respondent, the petitioner has failed to demonstrate the type of inconsistency that could possibly support a due process violation, if such a violation may be considered a clearly cognizable claim for purposes of federal habeas review. The state courts performed a critical review of the statements at issue and determined, as a factual matter, that the positions taken were not inconsistent. Such a factual determination is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct"). The petitioner has failed to show any reason, much less a clear and convincing reason, that the state courts'

14

determination of fact should be considered incorrect. *See id.* ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Notably, the petitioner's phrasing of his factual basis for the estoppel issue before the state court, i.e. "the solicitor strongly suggested the jury could find Petitioner shot the decedent," (PCR Supp. App. 70), supports no blatant inconsistency or false statement. Based upon the foregoing, the petitioner is not entitled to federal habeas relief on this ground.

### Ground Two

In Ground Two, the petitioner contends that his trial counsel was ineffective in failing to call co-defendant Marshall as a witness to corroborate his defense that he was merely an accessory after the fact. This argument was addressed on the merits by the PCR court and on appeal by the Supreme Court of South Carolina.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690. With regard to guilty pleas, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The review of ineffective assistance of counsel claims in federal habeas is centered upon whether the state court decision was reasonable. 28 U.S.C. § 2254(d). Moreover, each step requires deference – deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

The Order of Dismissal reflects that the PCR judge identified and utilized the correct *Strickland* test (App. 497-98, 501), and the Supreme Court clearly relied upon *Strickland* to guide the analysis of the petitioner's claim, *Edwards v. State*, 710 S.E.2d 60, 64 (S.C. 2011). In his petition, the petitioner conceded that the state supreme court recognized the correct standard (Memo in support 4). He questions only the application of that law to the facts of this case. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1399 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000) ("If the state-court decision 'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'")). The record conclusively shows that the state court reasonably applied the *Strickland* test to the facts of this case.

The petitioner complained in his PCR action that counsel was ineffective for failing to call co-defendant Marshall as a witness for the defense (App. 498). At the PCR

hearing, the petitioner presented Marshall as a witness. As to the petitioner's involvement in the crimes, Marshall testified: "It is my understanding he had no involvement" (App. 418). He testified that the petitioner's counsel, Mr. Grose, did not speak with him about the matter, but that he would have testified at the petitioner's trial: "I would have told the jury that he had no knowledge of that crime being committed. His involvement was none. He was not even involved in the crime" (App.419). He claimed the petitioner was "shocked" at the shooting (App. 421). He also claimed that the shooting was an accident, and there were not even "harsh words" exchanged before the shooting (App. 420).

Counsel confirmed in his testimony that he did not interview Marshall, but he had a copy of Marshall's guilty plea and his statement, and Marshall's PCR testimony was not inconsistent or surprising (App. 427-28). Counsel testified that he had considered calling Marshall and had so advised the trial judge, but he had great concern over whether Marshall could "hold up on cross-examination" (App. 426-27). He explained his opinion of the value of calling Marshall (*see* App. 427). Counsel also testified that his decision not to call Marshall was a strategic choice (App. 427, 429). Specifically, he was concerned about Marshall's evasiveness at his plea hearing and contradicting forensic evidence (App. 430, 432).

The petitioner also testified at the PCR hearing. He testified that he only helped Marshall after the murder; that the shooting was sudden; that there was no argument before the shooting; and, that he was shocked by the shooting. The petitioner further testified that he believed Marshall's testimony would have made "a big difference" at his jury trial (App. 436-37).

In finding trial counsel credible, the PCR judge stated:

The decision not to call the co-defendant was clearly a planned and calculated decision made by his lawyer. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for

17

> employing a certain strategy, counsel's choice of tactics will not
> be deemed ineffective assistance. Only in hindsight, can the
> failure to call Mr. Marshall seem as an error. Even if seen as
> an error, this Court is not persuaded that the error was
> objectively unreasonable or that the testimony would have
> made a difference to the jury.

(App. 499-500).

This PCR court's credibility finding is entitled to deference. *Wilson v. Ozmint*, 352 F.3d 847, 858-59 (4th Cir. 2003). The petitioner may overcome this deference only by showing "clear and convincing evidence to the contrary." *Id.* (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003)). The petitioner cannot make this showing as counsel's testimony is well supported by other evidence of record. Specifically, during Marshall's plea, when he attempted to claim accident, the plea was stopped (App. 470-76). Further, there was forensic evidence of a beating that was not specifically addressed by Marshall in the guilty plea (App. 474-75). Accordingly, the record supports a basis for counsel's expressed concern, which, in turn, supports the finding his testimony was credible.

In its review of the PCR court's decision, the Supreme Court of South Carolina found counsel was not deficient and specifically noted the Supreme Court's caution in *Strickland* that there exists a "strong presumption that counsel rendered adequate assistance" and one should refrain from reviewing counsel's decision through "the distorting effects of hindsight." *Edwards,* 710 S.E.2d at 64 (citations omitted). The court found as follows:

> Although Petitioner's attorney admittedly did not interview
> Marshall, he did observe Marshall at the plea hearing. Based
> on this observation, counsel concluded as a strategic matter
> that he was not going to call Marshall as a witness. Chief among the reasons for that
> decision were Marshall's ability to withstand cross-examination due to his prior vacillation
> and the cumulative nature of his testimony. Additionally, Petitioner's attorney knew entirely
> consistent evidence would be presented through Petitioner's statement to the police. A
> witness's credibility and demeanor is crucial to an attorney's trial strategy, and an attorney

18

cannot be said to be deficient if there is evidence to support his decision to not call a witness with serious credibility question, even if that witness is a co-defendant.

*Id.* at 65 (citing *Jackson v. State*, 495 S.E.2d 768, 771 (S.C. 1998) (holding counsel had a valid strategic reason for not calling a co-defendant as a witness where the co-defendant's credibility was a concern and the same evidence would be presented through another witness); *Stokes v. State*, 419 S.E.2d 778, 779 (S.C. 1992) (finding counsel's decision to not call witnesses reasonable where their testimony would have been of no value to the case and they made inconsistent statements in the past)).

The court further found that the petitioner had not shown prejudice from his counsel's alleged error:

> Petitioner alleges that he was prejudiced because if the jury heard Marshall's testimony that Marshall was the lone gunman and Petitioner had no involvement whatsoever, there is a reasonable probability that the jury would have had a reasonable doubt as to Petitioner's guilt. However this argument belies the evidence that the facts offered by Marshall at the PCR hearing are wholly consistent with the evidence presented at Petitioner's trial. As his attorney acknowledged, the statement Petitioner gave to the police, and introduced at trial through a SLED agent, details the purported accidental nature of the shooting and Petitioner's lack of involvement. The case before us today is not one where the proffered evidence would have exonerated Petitioner had it been presented. Instead, Marshall's testimony simply would have been cumulative to evidence already introduced through other witnesses. While Petitioner's attorney did believe that Marshall's testimony would have affected the jury's decision, that belief was premised on the conditions that the testimony would be the same as it was during the PCR hearing subject to the same "limited cross-examination." However, counsel later conceded that he truly believed Marshall's testimony at Petitioner's trial would open the door for "a lot" of cross-examination, thereby seriously undermining the chance that the jury would have been persuaded by his story.

*Id.* at 66 (footnote omitted).

As argued by the respondent, the facts concerning counsel's strategic decision not to call Marshall as a witness are supported by the testimony at the evidentiary hearing. Moreover, the application of *Strickland* to those facts was reasonable. If, unlike during the plea, Marshall had presented his testimony at the petitioner's trial without breaking down, he would have been subject to vigorous cross-examination at trial, including questions on the forensic evidence that the victim was beaten before he died. As the state court noted, the factual scenario that Marshall was the shooter and the petitioner was a bystander was before the jury (App. 198). Thus, the petitioner had the benefit of the assertion that Marshall was the shooter without the possibility of detrimental cross-examination. The court reasoned that "[w]hile Marshall's statements may have served to corroborate Petitioner's involvement in the crime, this benefit must be evaluated against the legitimate concerns regarding Marshall's credibility and the strong evidence of petitioner's guilt. Those concerns run directly counter to the possibility that the jury would have reached a different result had Marshall testified." *Edwards,* 710 S.E.2d at 66.

Nothing presented in Marshall's testimony was clearly exculpatory. *See id.* ("The case before us today is not one where the proffered evidence would have exonerated Petitioner had it been presented."). The petitioner admitted that he was present, admitted that he helped Marshall, he shared in the proceeds from the robbery, and he had "joked" with Marshall prior to the shooting about robbing someone (App. 198-201). The fact that he did not actually pull the trigger does not prevent a guilty verdict: "the Solicitor argued the case on a theory of accomplice liability, not principal liability." *Edwards,* 710 S.E.2d at 66 n.2. *See generally State v. Langley*, 515 S.E.2d 98, 100-01 (S.C. 1999) (discussing guilt under accomplice liability theory).

The petitioner has failed to show that the state court unreasonably applied United States Supreme Court precedent in deciding this issue. The petitioner has also failed to show by clear and convincing evidence that the state court reached an

unreasonable factual determination given the evidence and record before it. The court reasonably applied *Strickland* finding that the petitioner had not shown that his counsel's performance was deficient nor that, but for the alleged error, the result of his trial would have been different. Accordingly, there is no merit to this ground.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 13) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

August 3, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.